The Honorable Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Please be seated. We're glad to have you here with us today. We'll be hearing argument in three cases, and we can start with our first case, number 246270, Patrick McGraw v. Theresa Gore. Mr. McDonnell, when you're ready. Thank you very much. If it pleases the Court, David McDonnell on behalf of the plaintiff and appellant, Patrick McGraw. This appeal is the second time this case has reached this Court, and this time the trial court has dismissed the case on the grounds that Mr. McGraw did not exhaust his administrative remedies. And we argued in the trial court, and again argue here today, that he did, in fact, exhaust those administrative remedies because this requires the Court to address the policy itself. There is no requirement in the Prisoner Litigation Reform Act that a grievance be filed. The statute only requires that the administrative remedy be complied with. And in this case, because it was a medical emergency, there is a separate procedure set out that does not involve a grievance for obtaining emergency medical care, and this is exactly what he did. That procedure requires the inmate to submit an emergency medical sick request in order to obtain the medical care that he requires. And that is what he did. In fact, he testified that the only way he ever got to see a nurse at all was by submitting an emergency medical request. That is what he did. That is what the procedure specifies that he is to do under those circumstances, and a grievance procedure does not get the matter to the right official. There are delays. The time could include months, and by this time, Mr. McGraw, if he had filed a grievance, would be dead because he did not get the medical care. I want to make sure I understand your argument here. He files the sick visit because he has an emergency and he needs to see a health care provider immediately, but I would have thought the natural reading of this policy is that after that, if he is not sort of satisfied and he has a complaint, before he brings it to court, he has to exhaust it through the grievance policy. Not before he gets the medical care, but after he gets the medical care and before he goes to court. This is imposing an additional requirement on inmates who have emergency medical conditions. Certainly, one of the things that happened here is that by following the medical procedure set out in the administrative procedure, he was able to get the medical care that he was looking for. That may be the basis of your claim, but it seems to me if that is right, doesn't that mean you don't have any injury that you are here in court for? If all you wanted was the medical treatment and you got it, then we wouldn't have a case. It seems like you want more and I understand that. You want financial recovery for the delay, but that is part of the grievance, isn't it? Your grievance is that the delays caused damages and you now want some recovery for that. Doesn't that have to go through the grievance process under the statute? Your Honor, I believe that the record reflects that he wouldn't have gotten the care unless he followed this procedure because he said that he submitted other sick requests and did not get to see a nurse. I encourage the court to be mindful of how difficult it was for him to see a doctor. I am not quarreling with that. I am not saying he didn't do all he needed to do to try to get medical help at the time, but I guess my question is more of what is the nature of your claim here? It seems like it is for monetary damages based on the delay. My question is if that is true, the procedure that you say he exhausted seeking emergency medical help, it seems unrelated to the thing you are suing about. Well, if the court looks at this as a complaint that the administrative procedure was ineffective, it was ineffective. He submitted an emergency medical request and got to see a nurse but did not get to see a doctor. The nurse did not put him through to a medical professional who was capable of making a diagnosis or giving a prescription. He had to go back a second time. Totally get all that and that may entitle you to recover damages. The question is under this act, do you not have to file that claim through the administrative procedures first? I suggest that the court needs to take reference to the purposes of the act. The purposes of the act is to provide the administration with advance notice at a time when they can address a concern. This process that is specified in their policy does allow that. They had an opportunity, they had several opportunities to address the problem and he submitted several emergency sick requests to do that. The next requirement is it gives them an opportunity to create a record. There is a complete record that deals with virtually every issue that is presented in this case because it began with the documentation of the emergency sick call request. The nurses took notes as to what happened. They memorialized that they did not put him through to a medical care provider for three or four times in weeks. He came back again and again with the same complaint. At one point, I think this was the third interaction that he had with them, asking to see a doctor and they would not let him do it. He said... Just to help me understand, and maybe this will be the last time I will ask it, I think both my colleagues have asked it. I am just going to take another swing at it to see if maybe my question gets answered. What is the remedy that you are seeking in this lawsuit? We are seeking compensation for his injuries. Damages, right? That is correct. The damages you are seeking are as a result of the past conduct of the prison? Everything that is spelled out in the administrative remedy. The damages you are seeking are for the past conduct of the prison officials, right? The same conduct, yes. Things they did not do in the past. This is a basic idea, but it is things that the prison officials did in the past or failed to do in the past. That is what you are seeking damages for. That is correct. It is those same things that he was following the administrative procedure. Help me understand. The emergency provision says that it applies when what you are seeking presents a substantial risk of physical injury. How are the damages that you are seeking for past conduct in any sense an emergency, such that it presents a substantial risk of physical injury? What you are seeking, not what happened in the past, because that no longer presents any risk of injury. It has happened or not happened. He got the injury or did not get the injury. It does not present it today. That is past. How is what you are seeking present any risk of injury? It presents a potential recovery. It presents a risk of financial loss to the state, but it does not present any risk of injury today, the claim you are making. No, it no longer presents an injury because the injury already occurred. The injury occurred because the administrative policy was not effective to get him to see a doctor in time before this infection set in and destroyed the level of his lung. Just to tie the bow for me, help me understand why, given your concession that your claim does not present a risk of injury today, the claim that you have brought and the remedy you are seeking, tell me again why you cannot exhaust, why you are excused from exhaustion? You plainly do not fall in 03-08. You just conceded that. Why is it that you do not have to exhaust? Because he did exhaust the remedies. The financial consequences, they could not have compensated him for that anyway. The financial consequences, they could not have compensated him for that anyway. Say that a different way because that seems like a word salad. I am sorry. The grievance procedure does not lead to monetary damages, so he could not get that through the administrative procedure, no matter what he did. That may be true. That may be completely true, but hadn't the Supreme Court told us that that is not a basis for exhausting, that Congress has said you must exhaust, and that may seem inefficient and maybe even silly in a case like this? I can understand someone saying that, but hasn't the Supreme Court told us that if you can't get money through the administrative procedures, that is irrelevant under the statute? You have to do it and go through the motions anyway because Congress apparently felt like in enough cases that would help resolve prison compliance. Your Honor, I believe that the purposes of the statute are not served by this because one of the purposes of the statute that is laid out by the Supreme Court in the Jones decision is to allow the courts to consider meritorious claims and to throw out the frivolous claims. This is not a frivolous claim, and the trial court has determined that, and what this additional requirement of filing a grievance, the only thing that it accomplishes, it doesn't accomplish any of the purposes that are set out for the Litigation Reform Act. It only accomplishes one thing, and it accomplishes exculpation of the prison officials who violate the Constitution. And on a technicality, here, Mr. McGraw, this 90-day period that they contend has for filing a grievance, at least 43 days of that ran while he was in intensive care after brain surgery, removing a portion of his brain, and then there was an additional period that he was in recovery while he was at Central Prison when he was returned. And there's suggestions in this Court that this procedure has a tolling provision. And if there's a tolling provision, surely it should apply for the time, and frankly I don't see how the other side could defend a grievance procedure that didn't take into account the prisoner's condition, particularly given here that he had difficulty reading. He can't. Counsel, can I just ask you something about that? Because the way I read the district court opinion, it seemed that the district court did take into account the time in the hospital, certainly, right? The district court didn't hold that time against your client. The district court said after he's out of the hospital, there's 62 days between that and his release from prison, and at no point during that two-month period did he file his grievance. So I didn't really understand the district court almost to be disagreeing with you on the idea that, look, he's having brain surgery, you cannot hold that time against him. Your Honor, Mr. McGraw has documented limited ability to read and write. He was a special needs student in school. That I totally understand that, but the PLRA doesn't really, I don't think, and I don't think this court has suggested that there's an exception for that, for being a special needs student. And frankly, I don't see how a grievance policy that doesn't take that into consideration There's assistance available, right? Yes, but if it's available, that does not mean that he has access to it. And he said in his deposition testimony that because of the nature of his injury, nobody was willing to go near him, and he couldn't interact with other inmates, and that no one wanted to talk to him about anything, and frankly, I think it's placing too difficult a burden. I'm sorry, may I finish my sentence? Of course. It's placing too difficult a burden upon him to initiate all of this process while he's in the process of recovery, because his recovery didn't stop when they released him from UNC Hospital. His recovery continued when they readmitted him to the Central Prison Hospital. Thank you, and you do have some time on rebuttal. Thank you. Hey, police court. My name is Alex Williams, and I represent the defendant, Epeliz. It is unfortunate what happened to Plaintiff, but that is not the fault of the defendant. It is certainly not their fault that Plaintiff did not file a grievance. This case boils down to two simple questions. Is a written grievance required under the administrative remedy, and is Plaintiff excused for failing to do so? And if we accept Plaintiff's arguments, it's going to wreak havoc on the prison system for three reasons. Allowing non-written grievances or sick calls as Plaintiff... Can I back you up to sort of a premise here? It strikes me as a little bit odd that the PLRA applies, and I guess the question I've got... So he gets out of prison in 2016, and then he's put back in prison in 2018, and he files the suit in 2019. He's in prison for a different reason now, right? He's committed another crime, and he's now reincarcerated. If he had filed this lawsuit in 2017, so he had not exhausted, he had done exactly what he'd done, but instead of waiting until 2019, he'd filed in 2017, which is the one year that he managed to not get caught. Would the PLRA have applied then? Your Honor, the PLRA says that no action shall be brought by a prisoner. So I think in this court, in I believe it is Cofield versus Bowser, Fourth Circuit 247, Fed Appendix 413, so that's the status of the Plaintiff at the time that he files the  So you are correct. If he were out of prison in 2017, and he filed this lawsuit, the PLRA would not apply. However, that's not what we have. No, no. I totally get, right? That's why I'm asking the hypothetical. Right? But, and so in a sense, he could have filed suit and received recovery as long as he filed that suit in 2017. It's really the delay until after he gets caught and reincarcerated that reinstigates the PLRA's exhaustion requirement. That just seems like an oddity. I think you're right about that, but that seems odd to me. Your Honor, I understand that, but we're not the only, this is not the only time that this has come up and in other situations where this has come up, again, this court and others have held that it's his status at the time. And that's why, you know, we have inmates who pass away and they don't have to comply with the PLRA because again, they're not a prisoner at the time that they're filing their suit. And, and, and you're also, I mean, I think this is right, but, and it's also just when he files suit, the fact that he maybe gets out of prison as he does here, while the suit is pending, doesn't make any difference. It's literally just the moment that he files the suit. That's correct. I believe that's the way the cases have interpreted the PLRA, yes. And so in this case, if we allow, as plaintiff suggests, him to be excused from that by submitting these SIT calls, it's inconsistent with the PLRA's purpose, which is to give notice to prison officials. If a SIT call can satisfy a grievance, we're not giving notice to anybody other than the person whom he's seeking medical care for. Well, so I, I totally understand the argument about the text and why your argument makes sense. But if we're talking about the purpose, do we really think that prison officials didn't know what was going on here? Right? I mean, he's got like a flesh eating thing on his body. I mean, this is, this is something that the prison officials were aware of, right? They were giving him the treatment. This doesn't strike me as the sort of thing. The prison didn't sort of recognize was a problem. Your Honor, I think the, the notice, the purpose of the notice serves more than just a, okay, we know that this guy has this problem. It's did he complain about it? Did he ask for help multiple times? The difference between seeking medical care and complaining about a lack of medical care are two different, very different things. The SIT calls that he keeps talking about, that's how you get medical care. That's not how you complain about a delay in medical care. And the difference is significant. Well, it seems like it can kind of be both, right? I mean, just as a common sense matter, like you go in once, they don't help you. You come back the next day and you say, I'm still sick. The thing you did a couple of days ago did not fix it. Like it can be both, right? I don't think so because of where it goes. And the reason the SIT calls go to medical, there's a nurse that triages them and figures out what needs to happen. That's the end of it. The grievances, they get resolved at the unit level first at step one, then at the facility level at step two, and then at a state inmate grievance resolution board at step three. So you're putting people on notice higher than the person you're complaining about. If we allow that SIT call to serve as the grievance, the only person who's getting noticed is the same person who's allegedly grieving the inmate. And so that's not putting the prison on notice. So it's not satisfying the purpose of the PLRA. But just to kind of look at that, if you think that if the complaint is the harm caused by the delay and that that's in the past and you're seeking damages, it does seem to me that this exercise of filing a grievance for money damages based on past conduct is somewhat pointless or futile in this situation. Now that doesn't mean that it's not required by the text and it's not required by the Supreme Court. But just to follow up, it seems like your argument is textual and Supreme Court precedent and not the purposes of anything because one might argue the application of the text doesn't present the most fair situation for the plaintiff here. But that doesn't mean we don't have to follow the law. So I wonder why you're not just saying the text says this, the Supreme Court has said it a couple of times. I mean, the law may get you there, but the purposes of the act and fairness and equities seem like they're not on your side or at least they're debatable. Your Honor, I think the law does get me there. I think you're right in Woodford, the Supreme Court did say that PLRA exhaustion is required even if you can't get what you want through the administrative remedy procedure. And I think that the text is very clear that this is not, he had to file a grievance and he didn't do it. And so I do think that legally we get there, but even from an equitable standpoint, even after he was, let's say, let's kind of live in hypothetical land here for a second and say that he gets 43 days equitably told, just like the Supreme Court, just like the district court said, I'm going to discount that period for you. You still had approximately 60 days where you were incarcerated and you did nothing.  You didn't file a grievance. And when we look at equitable tolling principles, there are two components to it. First, you have to have that extraordinary circumstance. And even if we say that plaintiff's infection satisfied that part of it, equitable tolling only gets you to the point of excusing tardiness. It does not excuse a complete failure, which is what we have here. Can I ask sort of just in terms of the timing? Did I cut you off? Okay. I got something. Okay. And just in terms of the timing, what you were talking about with the equitable tolling, does the prison have a policy about this? What if Mr. McGraw had in fact filed a grievance before he was released on his current, what was the then current term of imprisonment? Before he's released, he files something on like August 10th, the day before he's released. So it would be outside the 90-day period, be more than 90 days since the incident, but a big chunk of that time he would have spent having brain surgery. Would the prison have said, that's late, you're outside the 90 days? Or would the prison have said, okay, under the circumstances, we'll count this one? So unfortunately, we don't get, we don't know the answer to that. Well, I was asking you if there's a policy. Yes, Your Honor, there is a policy. And in Section 306B and C, that is the rejection of grievances, B says shall, and it lists a few things.  C says may. Right. So I'm asking, how does the prison exercise that discretion in a situation like this, where someone files a grievance more than 90 days after the incident that gave rise to the grievance, but during some portion of that time, the person was in the hospital being operated on? Your Honor, I don't know that I've seen a particular situation like this, but I think I have seen situations where inmates have filed outside the 90-day period and the grievances have been allowed to proceed. And that is allowable under the administrative remedy procedure. So I do think that if the prison official wanted to, they could allow him to proceed after 90 days. Can I go back to Judge Cottlebaum's question? Do you accept, is the premise correct, so that money or things of value cannot be provided through the grievance process? So imagine this scenario where somebody comes in and says, I've got this terrible grievance where your guard senselessly beat me. And the process goes through and the prison system says, absolutely, you're right. They fire the guard and they go to the prisoner and they say, this is really terrible and we want to offer you $10,000 as a result to settle any future claims to resolve this process because listen, it was really terrible. It's on video. We totally get, like this should never have happened to you. We want to make it right. Is that something that the state could do or is that barred by statute or procedure in some way? Your Honor, I don't think there's anything that bars it by statute or procedure. And quite frankly, I would use a different example than your honors, but in property type claims, the state will commonly, through this grievance procedure, either refund inmates or things of that nature if they realize. Can you give me an example of that when you say a property type claim? Can you tell me like what or just some hypothetical example where that would result in some thing of value, money being put in the canteen account, whatever it might be? So if an inmate's trust account is incorrectly withdrawn from or something along those lines, the prison can go back and compensate them for that. I think in lost property claims, I think I've seen it with a grievance before. What do you mean by lost property claims? Like if the state is supposed to be in charge of their property and it shows up missing when they get ready to be released, they got it, they had it when it was inventoried, they go to leave and turns out the 500 bucks that was in their pocket isn't there anymore. Or exactly. Something along those lines. Or a watch or whatever it might be. Something along those lines. I believe I have seen that. And so I do think that there is a possibility for compensation under the administrative remedy procedure. There's nothing under statute or rule that would bar it. Now I do think that we would obviously have some quarrels about the amount of damages when you're starting to talk about a situation. I'm not saying it's likely. I totally understand it's not likely. I took Judge Cottlebaum's question to be premised on the idea that damages were not available in the grievance system. And that may practically be true, but it doesn't seem to be like absolutely true. It is not absolutely true. I'm not aware of anything that would bar it. And so when we look at this, Plaintiff kind of talks about briefly that he is, you know, he claims that if we get past the part and say, yes, you were required to submit a grievance and you didn't do so. And Plaintiff says that the reason I didn't do so was because I was so mentally incapable and all of those things. Well, with respect to Mr. McDonald, I think that he's putting some labels and some conclusions on it that the record evidence just does not support. The district court looked at all the evidence and it found that Plaintiff had not satisfied anything to show that he was incapable of doing so. The administrative remedy procedure, even if he did, the administrative remedy procedure accounts for that. It says that when, if you were incapable of understanding this procedure, incapable of complying with it, you can get assistance. And there's not been any evidence to suggest that Plaintiff ever requested assistance. So the administrative remedy procedure was available to Plaintiff. He just simply failed to comply with it. Can I ask you just, the district court did do that, like really careful kind of walking through the chronology and here, right, he's released from prison with 62 days to go before, I'm sorry, he's released from the hospital with 62 days to go before he's released from  prison. But what, it just hadn't occurred to me before this case, what happens if, like what if he'd been released from prison the next day? Like what if he got out of the hospital on whatever it was, day, June 10th? And then he was released from prison on June 11th. Would you still say like, whatever, he had a day, should have filed a grievance? I would say, and I assume in your hypothetical he does get reincarcerated again. No, let's assume he doesn't. Well, if he doesn't get reincarcerated again, I mean, he's- Oh, that's true, then he never, the PLRA never, okay, okay, so he gets reincarcerated. So under your example, if he does get reincarcerated, I think he would still have to at least file a grievance. If it gets rejected, I think we're in a much different place. I see, if it gets, so if he filed then and then the prison said, you're too late, it's more than 90 days, then what? I think we're in a different place than we are here. And in that scenario, there have been courts that have held that an inmate must appeal a rejection. And I don't think the plaintiff, we know he never filed one here, but under your hypothetical, he would have to appeal, I think, that rejection. But I guess I'm just wondering what is the prison's, like this case in some ways seemed to the district court to be pretty straightforward. Look, you had 62 days. That's a lot of time. If you wanted to file a grievance, you could have. And I'm just wondering what happens if there's not a lot of time, what if it's kind of close? What would the prison's position be? I understand there would be an appeal, but that doesn't really answer the question. What would the prison be saying in that appeal? So again, I think that goes back to 306C where it says they may reject, they don't have to. Right, I know. I also saw that, but I couldn't find anything about how they would exercise that discretion. And I'm just asking you whether you know, does the prison have a policy about how it exercises the discretion it has under this policy not to enforce the 90 day time limit? I'm not aware of any specific policy about how to exercise the discretion laid out in 306C. But I think the discretion is there. I think it does make this remedy procedure available to plaintiff. He just simply failed to take advantage of it. So, in concluding, I do think, I agree with the district court, this is a pretty simple case. I do think that at the end of the day, plaintiff had, like your honor said, over 60 days from the time he was released from the hospital to the time he was released from custody to file a grievance. He did not. He had over a year when he was re-incarcerated to file a grievance. He did not. At no point in time did he try to take advantage of the administrative remedy procedure. And now he's expecting the court to excuse his failure. The PLRA does not include those types of exceptions. The sole exception to the PLRA is if the administrative remedy procedure was unavailable to him. However, we clearly see that it was available to him. So we would ask that your honors affirm the district court and dismiss the case. We're now in a context that doesn't apply and you can choose to just say I don't know. But would the argument in response to Judge Harris' question that if he's like released from the hospital the day that he is like conscious, that the argument would be made there that the grievance process would not have been made available to him in a reasonable way? Right? I mean, if he got out that day and then in that sort of context, I'm not saying it works or doesn't work. But the argument would be it wasn't available to him. There wasn't a grievance process available because by the time he was conscious, he was already released from prison. I draw a slight distinction between yours and Judge Harris' example because I think they're slightly different. Judge Harris, I think, had a day built in between. And so I'm going to take advantage. My next question was going to be that. And then we have some debate about whether it's available, right? And I understand that debate. But that would seem to be the question that we would ask, right, of whether it was quote unquote available in whatever hypothetical we want to give. That would have to be the inquiry. Is that a fair way of thinking about it? Yes. I think that's right. But I think in this scenario and the scenario you're proposing, he becomes conscious after he's already released. You're right. It would not be available to him during that time. However, he was reincarcerated for a year. And then we'd have that question, too, about whether it's available given C's discretionary review process. And so he had another year to file a grievance and he still did not. And so I think anyway- If you have any questions, sorry, this is all very hypothetical. But there is this opaqueness. You know, it's just kind of opaque. And I do wonder, like a prisoner who's reincarcerated, there's really nothing in the- maybe it doesn't happen that often, so you wouldn't expect to see anything in the policy, but would it be obvious? Like, would that prisoner really be on notice? Like if something happened five years ago, the first time you were incarcerated, you need to exhaust that now? Your Honor, I think our courts have done a very good job of putting inmates on notice that they have to comply with administrative remedies. So I would say that first, but also I would say that when we look at this, this is, like Your Honor said, a very odd scenario. I think that if we are forcing prison systems to dream up every odd scenario and account for them in a step-by-step fashion in their administrative remedy procedure, that is taking it beyond what the PLRA is requiring. It is not requiring us to dream up every situation. It's merely requiring that there be an administrative remedy procedure that is available to inmates. This was. He just did not take advantage of it. Thank you very much. Thank you. Mr. McDonald, you've got some rebuttal time. If it pleases the Court, I believe that the period of time that Mr. McGraw was an inpatient at the hospital was 43 days. That would leave 47 days remaining on his 90 days. If there's no totaling, that time expired before he was released from prison the first time. But that policy, since it doesn't seem to take into account the prisoner's condition, can't be squared with the Constitution. You're saying that the 90-day policy, to the extent it doesn't take into account his condition, can't be constitutionally applied, but I guess nobody did apply the 90-day limit to your client, right? It's not as though he filed a grievance and they said, you're too late. That's correct. I guess I don't see why there's a timeliness issue in this case. If tolling is a feature of this policy, and this Court suggests it is, and I believe I heard a concession from opposing counsel that it is... Wait, what was that? I didn't hear that. What he said was that the prison has discretion. Tolling is a court doctrine. What he said is, under C, the prison has discretion. I see. If you think you did, I just want to know what it is that you thought was such a concession, because I didn't hear such a thing. I think what he said was that missing the deadline is not automatically a rejection. That's what 306C says. He's just repeating what the provision says. Let's assume there is tolling here. If there's tolling for the 43 days, that starts the 90 days at least for that period of time, if not longer. At that point, he had been released before the 90 days had expired. There's nothing in this procedure. There is nothing in the law that suggests that if he is later re-incarcerated, that the balance of that term begins to run again. If that's a feature of this policy, surely it ought to be in the policy. I totally understand what you're saying. He didn't miss a deadline before he was released. It just strikes me that all of that would be highly relevant if someone was trying to enforce the deadline against your client, but nobody is. I really am wrestling conceptually with how we have a timeliness question in this case, given that nobody has rejected a grievance here as untimely. The trial court said that he missed the deadline and threw his case out. I thought the trial court said he didn't file a grievance and the grievance process was available because there were 62 days in which he could have. The trial court, I believe, explicitly found that the time period expired while he was still a prisoner in central prison. Therefore, it operated against him because he had not filed a grievance. You understand the district courts have held the reason you didn't exhaust is because you missed the 90 day deadline. The trial court has done that. Just so we're clear, I think the record is clear, whether it was within the 90 days or after in the time period he was incarcerated the second time, no grievance was ever filed. You concede that, correct? Certainly. There was no grievance filed when he returned to prison a year or two later. That's correct, Your Honor. But the 90 days had expired. The 90 days expired while he was free. I don't know how it revives. I don't know why the law would require that. Just so I understand, your argument that the 90 day didn't expire until he was out of prison turns on some suggestion of tolling? That's correct. Just help me understand, where do we get that from? Most tolling doesn't operate in a world that we ignore the time. It may extend the time given reasonable efforts and lots of different things, but we don't normally think of tolling, even if it applied, which it's not obvious to me why in the world it would here, but we don't normally think of tolling as saying we just don't start the clock until we decide it's a good time to start the clock. Well, here, the clock started, according to the trial court, the 90 day clock began when he actually resolved his dispute with the nurses and got to see a doctor. Now, from my perspective... Ninety days from that point, he was still incarcerated, right? Ninety days from that point, of which 43 days, he was in the hospital in intensive care most of that time. And frankly, I don't see how the court can hold him responsible for formulating a need to file a lawsuit based on consequences that have not become even apparent at the time, although we know that they were catastrophic, while he's in intensive care from brain surgery, frankly, Your Honor. But, in any event, that time expired and he was released before he was required to file agreements. And at that point, he no longer had an obligation to file agreements and it wasn't available to him. Finally, there's a difference between a sick call and an emergency sick call. A sick call is something that you submit, those were completely ineffective. He invoked the process of the administrative remedy procedure by submitting the emergency sick call request. Those were ineffective. And it's all documented, and that's his complaint, is that he did not get to see a doctor until it was too late. I believe my time is completed. Thank you very much for your attention. We will come down and greet counsel. We'll come down and greet counsel and then hear our next case.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.